is 24-11085 United States v. Reed. Mr. Wright. Thank you, Your Honor. Good morning. Counselor Mayotte, please, the Court. I'm limited in time today. I would like to address three points before the Court of Appeals which we've been talking about. First, the statutory exemption clause and the Herring case. Second, the mental state and Rahate issue. And then third, if we have time, the Fifth Circuit jurisprudence on that is applied. Second, the challenge to the statute. That's ambitious. Well, I'm not sure I'll get all there, but I do think that the exemption clause is particularly important for the other questions. I mean, it's sort of preliminary knowledge. And we're just asking you to apply Congress' statute as written in 1986, and that is, in general, I'm going to say righteous or pardoned. When I say that today, I mean, there's several options by which Mr. Reed's rights would have been restored after the first alleged conviction, and probably or could have been restored after the alleged second conviction. And that would also lift the federal firearms disability unless that restoration of rights or pardons, et cetera, explicitly prohibited him from possessing, transporting. I mean, those are the two verbs that are relevant here. But in that sense, it would not lift the disability. So there is an exception, which the Supreme Court calls the exemptions clause, and then there is an exception to the exemption, which is called the unless clause. The unless clause just doesn't apply here in Louisiana because the only restrictions that would apply to someone after one of these kinds of restorations is they are ineligible for a statewide concealed carry permit. They can possess any lawful firearm. They can transport any lawful firearm. Is there any circuit that has yet said that the restriction against carrying a concealed firearm doesn't trigger the unless clause? I haven't found it, if there is. But I'm also not sure how many states have a setup like Louisiana, where the default is you can carry a firearm anywhere. It's an open carry state. Now, you wrote an excellent, long principle brief, but there was no reply brief. That's correct. So I have a lot of questions just simply, unfortunately, swallowing your time that are responsive to the government's brief. I'm happy to answer them now. I may mispronounce it, but Killiland. This is the unpublished case. That's the unpublished case that seems to follow the Sixth Circuit and other circuits that interpret Koren. Is it Koren? I think Karen is how Justice Rehnquist said it. As sort of an all or nothing rule. You should listen to it just because he yells at people leaving the court afterwards. So I listened to it last night. But Killiland, the defendant defense counsel conceded in that case that the all or nothing principle would apply there. And I think Michigan had more restrictive firearm laws from the beginning. But am I oversimplifying it to say there is a restriction on concealed carry under that persuasive interpretation, at least in as much as there's no circuit that disagrees. That's it. If this court were to follow the rule that said any residual limitation related to firearms. But what circuit hasn't? And I know that's been criticized. But would we be charting? Are you asking us to chart a new path? I don't think I am. Because I think this circuit said, and DuPaguier, and I may be butchering that pronunciation, said that Louisiana's general restoration of rights is sufficient. Now, as we pointed out in our briefing, looking at the calendar dates, that decision, I think, preceded the enactment or the effective date of Louisiana's scheme before that. But the general rule is the one that Congress enacted in 1986. I just want you to apply the text as written. That's what the Supreme Court did in the case, the Massachusetts case. And they just immediately escaped me. I said it. Caring.  Thank you. The Caring case, they said it is a restriction. Now, in Caring, there was not a focus on whether it was the possession part of the unless clause or the transporting part of the unless clause. That wasn't important, because the question that was being debated there was to all or nothing approaches, all firearms, yes or no. But one of the circuits who has held that a concealed carry restriction is enough has pointed out that there is a significant restriction on the transportation of the weapon. Now, I say that was a carry restriction, not a concealed carry restriction. But here's the thing. In Louisiana, the defendant can carry a firearm concealed anywhere in the state. The difference is he just has to apply to that individual parish's sheriff for it. He is not disabled from doing it. He just has to have almost like a case-by-case type analysis. He's not even banned from concealed carrying. But more importantly, he's not banned from any type of transportation of any lawful firearm. He's not banned from possession of any lawful firearm. And that is very different from the situation that the Supreme Court dealt with in carry, where often  Do you agree under Brodnax this issue is for the district court pretrial? It's not an issue that goes to the jury? So I think there's two pieces to that question. In terms of what does this federal statute mean, absolutely, that is the district court's role. And it should be resolved by the district court. When, then, there is a separate factual question. So we have the law on one side. And then we have what actually happened in the real world. That is undoubtedly a jury question. And the Supreme Court has made it clear. I thought the undoubtedly a jury question was the conviction itself, which both parties throughout this trial litigated. And it goes to the jury pursuant to our pattern instructions. But as to whether or not the conviction qualifies as a predicate, that was decided pretrial as to your A220 issue, post-trial because of Diaz, with the motion to reconsider, as to the Bruin-Rahimi. So let me put it this way. The 2007 alleged conviction doesn't count, if I'm right. That's just how it looks. It doesn't count at all. The alleged 2009 conviction might or might not count, depending upon when the defendant discharges the sentence. Am I right? The government's answer, well, we'll hear from them. But they said the 2007 counts because A220 was properly ruled on following Killalin. And then they say, but even if we're wrong, that error is harmless because you've not made an attack on the 2009 felony. They just had to prove one. And that second argument is wrong. We have made an attack on it. And we made an attack on it. But you haven't made a unanimity request. So they don't have to win on both. They just need one. Is that correct? They just need one. Because the indictment was bare bones. And it just said A, A prior felony. And there was no bill of particulars. You didn't ask that the jury had to be unanimous as to the qualifying one. So they win if either one counts. Yes or no? When you say we didn't ask for it, we asked for the court to say the 2007 counts. I know. But you didn't ask that there be a special verdict, that the jury say, this is the one we think all of us counts. Right. I don't believe that we would have been entitled to that under the district court's ruling. The ruling meaning that they're both one or the other of the same. As a matter of fact, the district court's ruling allows for the jury to disagree about which one is which. But I think that the important thing is there's this sort of pretrial ruling on the 2007. And then the parties in the court treat it as dispositive of the entire question. Now, there are a lot of subsidiary questions that I've raised in my brief about that. But the statutory interpretation question, that is a question of law. That's the one we're asking you to resolve. And again, resolve it by just applying what the text says. Counsel, I want to make sure I heard your answer to Judge Higginson's question about the 2009 conviction. Why is that not harmless error? I'm sorry, why does that not render the problems of the 2007 conviction harmless error? Several reasons, Your Honor. First of all, because that one probably doesn't count, too. Or maybe doesn't count. We don't know, because the government has no competent proof or trial-level proof that he ever served a sentence. Or when he was there, when he was gone, et cetera. So that is an issue. Another thing about the 2009 conviction. But that's a jury question. Should be, yes. That's why I think it's wrong. That's why I don't want to say, this is a question for the court to resolve. Properly understood, if you change it. No, but keep answering Judge Oldham's questions. What's your second? So that's one. Another thing is that in the 2009 alleged conviction, by that time we know that Louisiana Supreme Court required a uniform commitment order, which is like a judgment. I mean, I was surprised to find in Louisiana, at least in some places you didn't have a written judgment. But they had things that were close to it. They had commitment papers that were sent to it. They had penitentiary effects. None of those things are available. Either because the conviction didn't happen, or because Louisiana's got rid of it, because the conviction isn't a conviction, or whatever it is. So we have no real record. What is the evidence of the, I guess it's the 2009 case and the 2011 conviction, but we're talking about one felony. What is the evidence that your client committed that felony in 2009, and was adjudicated guilty in whatever way in 2011? You say that he committed. The evidence that he was convicted of was a charging document that was submitted. That charging document did not have the defendant's fingerprints affixed to the back, which is required under Louisiana law, if he had been convicted of it. There was a set of, or a single electronic minute entry of a clerk, sort of a generic type thing. And there was. His jail call. They're bits and pieces. The jail call pretty clearly refers to the 2007. I thought some witnesses said he had two convictions, felony convictions. No? There was no witness who said he had two? A witness, they're just, one of the ATF guys says, we looked at the computer and said there's. It's a jury issue, right? You'll see the objections there, the objections on confrontation grounds, on hearsay grounds, on personal knowledge grounds. But you have anything other than insufficiency, as to the 2009, 2011 conviction? Or is your entire argument that there just wasn't enough evidence to support the jury's finding that he is a felon under that? I appreciate the opportunity to clarify. If you change the ruling on the exemption clause, then we have two additional defenses as to the second alleged conviction. One of them being that, in fact, OK, fine, if you believe that he was in fact convicted, his rights were automatically restored. It's a matter of state law. Or maybe, maybe that he wasn't, but he didn't know that. And one point. This is the Rehef argument. A version of it. Yes, a version of it. But you got the instruction that Sienta is required, knowledge that he's a felon. You were able to argue it. And you disagree with me, obviously. But you asked for the instruction. Originally, you said you didn't want instruction. Then you did submit the instruction, as I read it. But the district court gave what our pattern is. That meets Rehef, right? Just really quickly. One premise I have to dispute is the idea that we said we do not want that instruction. Absolutely not true. Read the whole exchange from 882 to 888 in the record, and you will see. The Venn-Eyer panel is about to come in from jury selection. The government rises and gives six pages of a broad-based attack on whatever. And it's not super clear what it is that defense counsel is responding to. But in the end, you submitted your own request of instruction. So whether you did or didn't. Before and after. Yeah, so you're OK. I mean, I agree with you. We're big on that. This was the whole point. I know. OK, but yours did, I think, legally correctly ask to read aloud 820. So as far as I can tell, the law is right. But the test for us as to reversible error would have to be that it wasn't substantially covered, and it somehow impaired what you could argue. But let me give you one example. I'm not admitting that this happened. Again, because we put them to their burden of proof. Hopefully nothing I say will change that if we go back. But in the pre-sentence report, there's an allegation that this defendant was arrested in July of 2012 for a state felon in possession charge. And then in March of 2013, he was acquitted of a state felon in possession charge. And so in some of the alleged ending dates, discharge dates, or whatever, maybe they just eke into the 10-year waiting period. But certainly there is a defense that the defendant didn't realize something had happened. But you were free to argue that, right? No, we were not. Because under the district court's ruling pre-trial, 820 is off the table. Oh, I see what you're saying. So we were saying, OK, even if you think we're wrong about the restoration of rights operation here, at least let us tell the jury about how that works so that we can kind of explain the significance of what 10 years is. Why he might have thought 10 years mattered. That is off the table. Because under the district court's ruling, the restoration of rights is treated as a matter of law in the sense that the judge gets to be the one to decide whether or not you mediate. Well, here's the thing. You're going to sort out the whole Bruin-Rahimi problem. I've been proven wrong on this before, Your Honor. The 2009-11 is an in co-ed crime. Would it qualify under existing Fifth Circuit law or not? I think no, it would not qualify. It's in co-ed. It's not burglary. I don't think that death relatedness is really a holding of any decision so far. Certainly, subsequent panels describe SNR that way. That is dictum. And also, the rationale of Diaz is, take the closest founding era analog, ask, is that capital? And if so, then the statute can constitutionally be applied against it. Well, even the dictum part of SNR at the very end, where they're adding support to the aggravated assault, the court says, it's robbery and burglary. And they say, and under Diaz, those count because they're death related? No, under the actual decide holding of Diaz, those count because the closest founding era analogs are capital. That is not the case with either of the alleged convictions here, not the 2007, which again, doesn't count for independent statutory reasons, and the 2009, 2011, whatever it is. It would not count because it wasn't even a crime. I mean, residential trespass is not a crime. And so the court has held that at least two as applied challenges have been sustained. One of those is the founding retreated debtors separately from thieves. I would say, at the founding, we treated thin citizens, if you will, or people who were in possession or receipt of stolen property differently from thieves. As far as you know, there's no pending en banc as to Diaz in our court? Or no pending cert that's been relisted a lot about 922G? On the second question, there's a list longer than I are, including several of mine. In terms of what the court is doing, of the people in this room, I'm probably going to be disqualified to answer that question. The court has no further questions. This time, I've reserved a little time for both. Thank you. Good morning, Your Honors. Counsel, will you please support John Bradshaw from the United States? We think we have the better reading on the 921A20 part of the killing and discussions we were just having. But to go right to Judge Goldman's question about Parnell's error, Mr. Wright mentioned two pieces of evidence. But he left out a third I think is key. So to Judge Goldman's question, TFO Brian Klein did testify. I did a mixed search. He has two felons. In addition, we introduced Government's Exhibit 23, which is what Mr. Wright was discussing. When you look at Government's Exhibit 23, it has a felony bill of information. And then when you read the minute entry, it talks about this defendant, same name, state Louisiana ID number, walked into court. The charge was amended. He pled guilty, sentenced to three years of hard labor, and advised of his right to appeal, and advised of his right to seek justice. That's the 2009 slash 11? Yes, sir. He served three years in prison for that? He was ordered to serve three years in prison. I can't tell what time it's credited. But the record is, to me, clear that he was released in November of 2012. And you don't have jail records or anything about the three years that he was in prison? We did not introduce any of those. Because the mixed search would pull up things other than convictions, wouldn't it? I would think so, Your Honor. And why those were not introduced, I don't know. So can we just talk about the 2007 one for a minute? Absolutely. So he's convicted in the 2007 case in 2007. His sentence expires in 2011. Is that correct? I don't know. On the 7 case. I understand. I can't tell if the sentences were blended. And so, in other words, I don't know the answer to that question. It seems highly relevant. I can sense the frustration on your side of the bench. I share it from this side. Because this is obviously an essential fact, both from the 07 and from the 09. Because we have to be able to figure out a bunch of relevant questions that go into the legal one, including, when did the sentence expire? When did the 10-year waiting period start and end? And then, what is the relevant Louisiana code provision that would govern, presumably, at the end of the 10-year waiting period, right? So let's just go with this for a second. Because I guess we're all just guessing by hypothesis. And we can figure out the legal significance of it later. But let's just say that the 2007 conviction expires. That is the sentence in the supervised release, or whatever it is that he gets in 07. It expires in 11. The waiting period expires in 2021. That's the restoration of his rights is in 2021. So that, I look at the Louisiana code that exists in 2021. Are we all on the same page so far? Yes, sir. What part of a Louisiana concealed carry statute regulated the possession of a firearm in 2021? The possession? My best answer to that, I believe, is 1495A. And it's not the possession. It's the possession of a concealed weapon without a permit. That was an independent office. But just in terms of the possession. Can you show me where in 1495A the word possession appears? I cannot show you in 1495A where the word possession appears. And that's because the word possession isn't in the statute. That's my recollection of 1495A. If I am sitting in the front seat of my pickup truck alone without a driver's license, am I possessing the pickup truck? It's my pickup truck. I'm sitting in it. I have title to it. I bought it. In fact, I went down to the Covert Ram, and I picked up the truck. And I'm sitting in it, owning it. Am I possessing it? Not a trick question. I think so. I don't know how to say that you're not. Yeah. I'm obviously possessing it, even though I'm not licensed to drive it. If you pick up somebody on the side of the street, and they're holding a firearm, does it matter, as a possession matter, whether they're licensed to carry one? Are they possessing it with or without a license? Suppose you have a firearm, and I steal your firearm. And then the police find it. I'm a concealed carry holder. I have a concealed carry permit. But that doesn't mean that it has absolutely nothing to do one way or the other with whether I'm possessing a firearm. I'm possessing it if I'm holding it and possessing it in the normal conceptions of possession, regardless of whether I have a permit to carry it. Completely different legal concepts. I understand your point, Your Honor. Our best authority on the question, I think, that you're asking is the Ninth Circuit's Vanderbilt case, and then this court's unpublished decision in Killiman, which talks about residual limitations. So I'm also concealed. Residual limitations on what? The language of Killiman says residual limitations on, I think Killiman speaks in terms of the Second Amendment. Yeah. I mean, this is what's so interesting. What does federal law say? There are four nouns. And what are they? They are possess, transport, ship, or receive. Correct. What is the restriction on possession that comes from the concealed carry statute? It is the way in which you possess it. So I am also a concealed carry permit holder. And I prefer, when I carry, like if my kids are around, to carry concealed. It's much safer. It's safer for me. It's safer for my children. And so if I am a felon in Louisiana and I cannot conceal carry, then I must open carry, then that is a restriction on the way that I possess that part. It's a manner of possession, not the fact that you're possessing it. Correct. OK. Even though federal law says nothing about the manner in which you're possessing it. Correct. I assume you're a concealed carry holder here in the state of Louisiana. In Texas. In Texas, great. So then you and I understand. Let's keep talking about Texas for a second, because I'm comfortable talking about that. So 4605 has this list of prohibited places, the so-called prohibited places list. One of them is like an amusement park. Can you, as a concealed carry holder, possess a firearm inside of an amusement park? Not absent some law enforcement exception or something. I mean. Exactly. And it has nothing to do with whether you have a permit. Right? Like you and I are both disabled from taking our guns to Six Flags in Arlington, regardless of whether we have concealed carry. These are completely separate concepts, right? One is about possession. One is about where you carry. There's all sorts of limitations that go on to the notion of concealed carry. But the fact that you can't carry a firearm inside of Arlington, even with a permit, does not mean that you have some residual restriction on your possession with respect to 922, does it? I don't know that I would think that. I don't know that that's true. But I do think, in the context of this statute, where felons cannot get a concealed carry permit, that is a residual limitation on their ability to exercise their secondment. So he has a separate argument about how it's not actually even a limitation on his ability to conceal carry, because he can just go to the sheriff of the relevant parish. So let's talk about that in a minute. But let's just stick with a second for just the statewide limitations on concealed carry. I've read, not 1495, I've looked at the Louisiana provision. There's not a single word in there about anything about possessing a firearm. Certainly nothing about transporting. Right? There's a list of things that say you can apply for a permit to conceal. But every single place that I can tell, correct me that I'm wrong, where you could lawfully carry a firearm in the state of Louisiana with a permit, you can absolutely possess a firearm there without a permit. It's my understanding as well. That ends it. You said a manner restriction. I think that's what the Ninth Circuit said in Vanderbilt. And there is a manner restriction in place here. Yeah. But see, and I appreciate very much your candor. It's one of the reasons I like talking to the FPD and the US Attorney's Office. I appreciate when you have candor with the tribunal. If it is true that I can possess a firearm every single place that I could otherwise carry a firearm, just one of them is concealed and one of them is permitted and the other one's not, I don't care about any of these other permutations precisely because the statute, the federal law that we're dealing with only says possess. So just pick a place in Louisiana. Right? Let's say you and I are going to go to the Bonton. Right? And we're going to have lunch there. Yes, you may be able to carry a firearm there with a permit, but you can possess a firearm there without a permit. And possess is all that matters. So why doesn't that end the question? No other circuit has interpreted it this way. This court has twice said in unpublished opinions that it does not answer the question that way. And so I think my best argument is those authorities. OK. Circuit splits are sometimes a good thing. That's one more your side of the aisle than mine. Yeah. OK. In terms of the harmless area, so I had mentioned two pieces of evidence, and I really wanted to get to the third piece before I sit down. The government also introduced evidence of Mr. Reed's fingerprints. These prints were sent by the state of Louisiana to the FBI after each of these two convictions. And the fingerprint examiner came in and said, I took Mr. Reed's fingerprints about a month before trial, and those fingerprints match their 10-point identification to the fingerprints that are in Government's Exhibit 37. So in addition to the TFO's testimony that he has two BCD NICs and a state court record that documents, we also have a Government's Exhibit 37. I just wanted to point that out. I apologize for interrupting that. I thought we had all of it on the table. But I appreciate it very much. Absolutely. In terms of the, I'm happy to go to wherever the court would like to go next. If you want to talk about the Rehave issue, second amendment, whatever the case may be. Vis-a-vis the Rehave issue, I'll say a couple of things. Number one, whether this 921A20 exception qualifies is a affirmative defense that the defendant has to raise. This court's case is in Mass and Huffy. And in this case, the defense attacked the 2007 conviction but made no independent attack on the 2009 slash 11 conviction that we've been talking about. So that argument is waived. In any event, as we've explained in our brief, it fails on the merits because we're within the tenure book back period at the time that this defendant shoots the fireball. But I think the only reason that no court ever gave Mr. Reed an answer to that question about what's the legal effect on the 2009-2011 conviction is because he never asked for one. So we think that's abandoned and waived. On the Rehave issue, like the affirmative defense in 921A20, I think any knowledge-based defense based on that is also the defendant's burden of production and persuasion. So that was never the defense in this trial. In the opening of the statements, the defense counsel never suggested our defense will be that he knew he was a felon, but he thought he had his rights. Mr. Reed did not testify. He did not put on any witnesses. He did not call anyone to suggest that that evidence existed. Once the district court made the ruling on A20 under Broadnax, whether it qualifies or not, was there any limitation or impairment on the defense's right at this trial, and then in closing, to say, well, you've heard about restoration difficulties, and we think, therefore, he didn't know he was a felon? I think the defense could have made that argument. I don't know that they were entitled to a jury instruction on it, but they didn't set it up. They didn't put the evidence in to support it. I guess what I'm, no, I fully understand the jury instruction issue, whether you would, well, my question is, by virtue of the pretrial ruling, was that also essentially a motion in limine to prevent them from arguing? I don't see it that way, and the record doesn't suggest that either. So in the pretrial conference that counsel opposite mentioned, the AUSA raises this concern for the judge, like, hey, have you seen their pretrial filings, their proposed jury instructions where people are going to argue this and sort of make us disprove this negative? How do we do that? And then the judge turns to the defense counsel and says, what's your response? And she says, that's not our defense, Your Honor. We raise that matter of pretrial, but this is not a matter of, that's not our defense, is what she says in ROA 880. And then they do submit proposed instructions. They do. Which are legally accurate, I think, as to 820. So that prong of the test would have been met by them. It's just what the court gave was the pattern instruction, which is just less but allows? Is that the government's position? Less but allows, and also there was no evidence to support a further instruction under 820 on this behavior. I see. So in other words, if Mr. Reed had testified, if his defense was, I admit that I'm a felon, but I believe that my rights were restored, I've done this research, I may be mistaken about that, but that's my defense, then maybe at that point, they would be entitled to an instruction on it. But here, all that we have is a clip of a jail call introduced for partial completeness reasons, where he says, I thought it was 10 years, but they go 15 now. My understanding of that is he thinks G1 is a 10-year limitation, not anything to do with Louisiana restoration. I think he was mistaken about the fact of whether federal law prohibited him from possessing a firearm. So where defense counsel explicitly disclaims this defense and then they don't put on any evidence to support it, I don't see how it can be reversible error not to give them an instruction. In today's world of 922G, these bare-bone indictments are difficult, especially when the article used is A. But I take it they filed no bill of particulars, so they never really wanted to know which felony counted, they being the defense? They being the defense. I will speak to my memory of the record. I don't recall. I've read this record several times. I don't recall a bill of particulars motion. If I'm wrong about that, I'll let counsel opposite correct me, but I don't remember seeing that. Because had they, and then had they asked for a unanimity problem, I think the jury would have to be unanimous as to one. I think that's right. But that's not an issue in this case. I think that's right, but it was not requested. We don't know which one the jury found. Focusing on the 2009-2011, which I agree with you, doesn't seem to have the restoration issue. It bumps into where our law is, if there's any coherence to it, as to Rahimi and Bruin applied to an inchoate crime. You heard him say this is trespass, it's not theft-related. What's your response to that? Our response is he was charged with aggravated burglary, and then he pled guilty to unlawful attempted breaking of an inhabited dwelling, essentially, and so the closest common law analog to that is going to be a burglary offense. When you say closest analog to what he was charged with or what he pled with, because that's the Kimball issue, right? I think both. What's the case that says we can look at what he didn't actually get a conviction for? Oh. That's surrounding facts, and the court in the published Kimball decision was pretty clear. We're not going the way the Third Circuit and whatever the other six. I want to be perfectly clear on this. In terms of the facts underlying the disqualifying G1 conviction, this court is absolutely looking at the facts. That's Morgan that we cited in our case. Schnur also does this. Now it's in the context of dangerousness. Right, but you never argued in this record that these qualify as dangerousness. We did not. Okay, so we're talking that these either live or die on theft-relatedness, the Diaz problem, because you never argued this is a dangerousness predicate. No, I think that's right. So in the theft context, what's the case that says we can assess whether it's theft by looking at not offense of conviction conduct? I don't have it in the theft-related context, but this court does it routinely in the dangerousness context, and there's no principled reason why you would do it in one context but not the other. Okay, that's a leap for me. Has any circuit anywhere—the other circuits don't really go our route. They say, and I didn't see you respond, they say in their brief that—I forget, like page 68 I want to say— that it wasn't until the 1820s that we had inchoate crimes here. Do you accept that proposition? I don't dispute that proposition. So then how could we say there's an analogous founding error or lifetime disarmament based on something that wasn't even a crime until 1820? Because at this point we're essentially asking for a historical twin. We're saying go back to the founding and find me exactly a law that's an inchoate, aggravated burglary offense. Right, but if they didn't even do it until the next century, why would we be looking for a twin? In other words, the government hasn't responded to that saying that's untrue, that the framers even envisioned these inchoate crimes. My best answer here is he's charged with aggravated burglary. He pleads guilty to a burglary-like offense. That is death-related under Schnur, and that is sufficient to defeat his as-applied-second-law charge.  We are an outlier circuit requiring the government to do any of this at the moment, right? Correct. You know—I've read the concurrences. You know the law very well. But, yes, we are an outlier circuit on this point. Yes, sir. I think I've covered— I guess because you both are very well-versed in this, so it's helpful for me in an area of constitutional flux. My biggest problem is notice. How would this gentleman know that this theft-related—either one of them, because the other crime is possession of stolen property under 500 bucks. How is an American supposed to know that'll put him in jail? So on the notice question, which I think— No, I understand. There's no vagueness argument here, no notice due process argument. Great. So that would all be weight, but just having a conversation about it.  The statute is clear. 922g1 is clear what is prohibited and what's not. You know, I guess potentially—and I haven't seen a case that says vagueness arises where you have this Second Amendment overlay, and that's the Branson decision decided in a case with a different proposition. Yeah, you're right. But hold this. The statute is clear in terms of notice. Thank you. Your Honors, we think that there was no error in admitting the 2007 evidence, but even if it was, it's harmless. We think there was no error vis-a-vis the jury instructions, but any instructional error would be harmless, and we think his two theft-related felonies are sufficient to defeat his as-applied challenge. We would ask this Court to affirm. If I could start with Judge Higginson's comment that there's no restoration problem with the 2009-2011 or out-of-script evidence. The PSR says ultimately the way the district court comes down and sentences, it's unclear when he was released from prison. It's unclear whether he was on parole or not. The evidence could very well show that he, you know, if he was in fact convicted, he was finished with incarceration in 2011, shortly after the loop, in which case you would then at least… But did you pre-trial attack the second felony on this basis? The reason that we couldn't is because we could say pre-trial as to the earlier conviction as a matter of law. There is no way that you could make this a qualified conviction. This is why I say in 2011 and 2009 alleged conviction. That's a jury question. And it's a jury question not because we're asking the jury to decide what the federal statute means, but once you correctly interpret the federal statute, this turns on questions of fact, which are solely for the jury's promise to decide. Now, there was some documentation from the Louisiana Department of Corrections not submitted at trial, and it was… they say basically we throw everything away after 10 years. You know, here's some database prints, and so those are in the pre-trial record, and we refer to them. But, again, if we're looking at the sentencing record, the sentencing record also alleges that this same defendant was sort of arrested in pending trial for another offense, a felony possession offense, and that he was ultimately acquitted of it. So the part that would matter would be a part that you would have a good faith basis to not do it. Now, as to the claim that we didn't raise this… I was a distant third chair in this trial. I don't know what more I could have done. I mean, really, like how many ways did we raise this issue for the court in requested jury instructions, supplemental requested jury instructions, in a motion to exclude just the one? Once the court rules, that doesn't matter. Okay, that takes off the, you know, we can't argue as to the latter conviction that in fact the rights are restored because, of course, even if he's pardoned, even if he's restored, it doesn't matter. Okay, so that ruling does take it off the table. And the alleged waiver, you know, the alleged disclaimer or whatever, no, that was in response to a six-page, you know, waiting for the jury to come in and do a selection, saying all of the reasons we're not allowed to argue that in front of the jury. And so I think the defense counsel is like, no, we're not going to argue that in front of the jury. We understand you've ruled on this. The court in that colloquy says, it's my understanding, and then I don't know if it's the transcript or just we were all tired. There was a lot of arguing, you know, before that point. The court says something, you know, makes it pretty clear that the court doesn't believe us on that. So this is why I start with the even less clause. If you just resolve the statutory interpretation question in my favor, everything else goes away. That has happened before. We have to do this again because that creates a defense both as to whether he was convicted but also as to whether he had knowledge of it. I do want to say that as to this idea that this is an affirmative defense, those cases that were cited by my friend, they both have the qualifier that when the claim is based on individual events. So like in Texas, Texas does not automatically restore most of those rights. And, you know, Texas is just different than Louisiana. Louisiana, all we need is the government's evidence to prove the alleged conviction. All we need is that and we need the law, Louisiana law, which we think we're entitled to instructions on, at least to the extent that it affects the jury's factual determination. That's all we need for that. Factual determination as to state of mind? Well, the jury, in our view, if we're right about a point, for a conviction that, alleged conviction that happened more than 10 years, so again, most felonies in Louisiana don't even trigger a ban, so it's just restoration. This is one of the ones that has the 10-year cleansing period. So for a cleansing period conviction that occurred more than 10 years before the alleged federal possession. In that case, yes, we are entitled to a jury finding that is sentence extended into the cleansing period. That's the same as Louisiana. Louisiana has to prove in its state law version that the 10-year cleansing period has not. Has any circuit said you're entitled to that? Do you know of any circuit that has required an A20 instruction along the lines that you're describing? I don't know how many states are like Louisiana. It would be this court, and this court has avoided published opinions. It's addressed other states with different distinct schemes. All of the district courts in Louisiana, at least that have ruled on it, as my friend points out, they all sort of say it's easy, busy district judges. But it comes up with some regularity. I think that's my time. Thank you, counsel.